UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(BOSTON)

| | |
|---|---|
| WEN Y. CHIANG, <br>                 Plaintiff, <br> v. <br><br> BANK OF AMERICA, MBNA AMERICA BANK, and FIA CARD SERVICES, N.A., <br>                 Defendants. | NO. 08-11908-RWZ |

### DECLARATION OF RANDOLPH GEISER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Randolph Geiser, hereby declare as follows:

1. I am an Assistant Vice President and an Operations Manager for Claims with FIA Card Services, N.A. ("FIA"). I submit this declaration in support of FIA's and defendant Bank of America, N.A.'s Motion for Summary Judgment. I have personal knowledge of all the facts set forth herein and, if called upon, could and would testify competently thereto.

2. Prior to my current position, I was an Assistant Vice President and an Operations Manager for Credit Bureau Disputes with FIA for over seven years. In the role, my job responsibilities included, among other tasks, interacting with credit reporting agencies ("CRAs") with respect to various accounts FIA maintains and for which FIA reports information to those agencies. My interaction included responding to consumer disputes that FIA is notified of by the CRAs. I am familiar with FIA's policies and procedures with respect to its reporting of account information to CRAs, and the processing of and responding to consumer dispute notifications from CRAs. I have access to FIA's historical records for FIA accounts and for dispute

notifications that FIA received from any CRAs with respect to accounts that are maintained by FIA, whether they were originated by FIA or by Bank of America, N.A. (USA) before it was merged with FIA.

3.     In general, CRAs provide notice of consumer disputes to FIA through a computer program called "E-OSCAR". The "E-OSCAR" program is a web-based program used by the CRAs to communicate with furnishers of credit information. Each consumer dispute is reported through the E-OSCAR system by an "Automated Consumer Dispute Verification" which is commonly referred to as an "ACDV." The ACDV contains the consumer information (*e.g.*, name, social security number, and address), account information as being reported to the CRAs from their records (*e.g.*, the status of the account, type of account, credit limit, balance, *etc.*) and information concerning the consumer's dispute (usually reflected by universal industry "dispute codes" which identify for the credit furnisher the nature of the dispute to guide the investigation).

4.     On average, FIA receives approximately 2,800 ACDVs per day from CRAs through the E-OSCAR system concerning FIA accounts. FIA has established a department called the Credit Bureau Disputes department to assist with processing, investigating, and responding to ACDVs. There are approximately 24 employees in this department.

5.     Each ACDV reported by the CRAs is put into a queue in the E-OSCAR system. The ACDVs are listed by response due date, and FIA investigates and responds to the ACDVs in that order. FIA employees have access to FIA account and billing records to enable them to investigate each dispute, review the account and billing history, and determine the accuracy of the information reported to the CRAs.

6. After FIA investigates an ACDV, it reports the results of its investigation back to the CRAs that sent the ACDV. FIA will either confirm, delete or modify the consumer's credit information based on the results of the investigation. FIA's response to the CRAs is transmitted by FIA electronically through the E-OSCAR system by FIA.

7. In preparing this affidavit, I searched the E-OSCAR computer system for ACDVs relating to Mr. Chiang's VISA account (ending in 7198) (the "VISA account") since January 1, 2007. I am aware that this VISA account was originally opened by Bank of America, N.A. (USA) and assigned a number ending 6419, and subsequently reassigned a number ending 1736 and finally the current number ending in 7198. My search for ACDVs included reference to the VISA account using each of these account numbers. I located ten (10) ACDV records in the system for this account. The earliest of the ACDVs received in connection with the VISA account was in July 2008.

8. I reviewed each of these ACDVs for the Visa account, and based on this review it is apparent to me that FIA investigated and responded to each of these ACDVs in accordance with its policies and procedures, and further that the response to each of the ACDVs provided accurate information for the VISA account based on the account history at the time of reporting. From my review of the account records for the VISA account and reporting information, I conclude that FIA at all times accurately and completely reported the VISA account information to the CRAs. It should also be noted that even *before* FIA received the first ACDV relating to the VISA account in July 2008, FIA was already reporting to the CRAs that Mr. Chiang was disputing his account information. This dispute designation was because of an apparently billing dispute that predated the first ACDV. The dispute designation remained on the credit reporting

for the VISA account since.  However, merely because Mr. Chiang disputes his account information, does not render the information inaccurate, and therefore FIA's policies require that at most the reporting indicate that there is a dispute.

9.      Through E-OSCAR, I am able to generate a summary report for each ACDV.  Each such summary includes both the CRA's reported account information, credit information, and the dispute codes, as well as FIA's response and updated account information, where applicable.  I have attached hereto as Exhibit A a true and accurate redacted copy of the ACDV summaries concerning Mr. Chiang's VISA accounts for each of the ten ACDVs which I obtained from E-OSCAR.  Each summary shows what the CRAs told FIA regarding the nature of Mr. Chiang's dispute, and FIA's response after it completed its investigation.  In each case, FIA either updated the account information to make the report accurate or confirmed that the information being reported was, in fact, accurate.

10.     For the Court's benefit, I have caused to be prepared a table that summarizes the key information for each ACDV summary.  A copy of that table is attached hereto as Exhibit B.  For each ACDV, the table shows which CRA sent the ACDV, the date FIA received the ACDV, the dispute code provided by the CRA on the ACDV, and FIA's response to the ACDV after its investigation.

11.     I have also reviewed FIA's reporting history on the VISA account.  At no time since Mr. Chiang opened his VISA account until March 23, 2009, did FIA ever report to any CRA that Mr. Chiang submitted a late payment on the VISA account, and when FIA reported a late payment on March 23, 2009, his payment was in fact late.  Additionally, at no time did FIA ever report that Mr. Chiang was "over limit" on his VISA account.  In fact, the template for

FIA's reporting to CRAs does not include a field for indicating that the account is "overlimit." Similarly, FIA does not report on individual credit transactions, but instead reports only on the account balance as a whole.

I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct.  Executed August 12, 2010, in Newark, Delaware.

                                              /s/ Randolph Geiser
                                              Randolph Geiser