UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| WEN Y. CHIANG, | ) | |
|     Plaintiff | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 08-11908  RWZ |
| | ) | |
| BANK OF AMERICA, MBNA AMERICA | ) | |
| BANK and FIA CARD SERVICES, | ) | |
|     Defendants | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S SECOND AMENDED COMPLAINT

## I.    INTRODUCTION

Defendant FIA Card Services, N.A. ("FIA") and an entity known as Bank of America,

N.A., [1] have filed a motion for summary judgment seeking dismissal of the remaining claim of

Plaintiff Wen Y. Chiang ("Chiang")[2] asserted in his Second Amended Complaint.  This

---

[1]  Defendants argue that plaintiff sued "Bank of America, N.A."  This argument is false, since plaintiff sued "Bank of America."  "Bank of America" was the entity that provided him with a Visa card and all of his monthly statements and correspondence from this entity only state "Bank of America."  All of the documents of the credit reporting agencies list only "Bank of America" as the creditor.  If the proper defendant is "Bank of America, N.A. (USA)" and that is the entity that issued plaintiff a credit card and made reports to credit reporting agencies about the account, then that is the defendant sued by plaintiff and the entity who is the defendant in this action.

[2]  Defendants falsely state that Chiang is a serial litigant and falsely state that Chiang he has filed 34 cases in federal and state courts since 2006. The Magistrate Judge improperly took a negative view of FIA's allegation that Chiang has filed approximately twenty-five cases in state court and eight cases in Federal District Court.  These other law suits have no relevance to the present action that stands upon its own merits.  Of the case filed in small claims court, some were settled and the others resulted in judgments for Chiang or for the other party.  Most of the cases in small claims court were for Chiang's family members and one case resulted in triple damages against Bank of America.  Of the five cases in Cambridge District Court, one was settled and another was voluntarily dismissed. As to the five cases in Middlesex Superior Court, two were dismissed and one is under appeal.  FIA overstates the number of state court cases filed by Chiang. For example, Chiang settled one case, but the defendant breached the settlement agreement, forcing Chiang to file a new action.  In addition, two of the state cases were combined and two were refiled in federal court.  A careful review of the court documents submitted by FIA shows that there are only fifteen state court cases filed by Chiang.  *See* Doc. 49-3.  Of the eight cases filed in this court, two were dismissed, two settled and two are under appeal.  In addition, most of the small claims cases were cases of Wen C.

PDF created with pdfFactory trial version www.pdffactory.com

remaining claim is for violation of 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act ("FCRA").

Defendants state that Chiang's FCRA claim refers to a line of credit account ending in 9211 and to a Visa account ending in 7198, but that the Court dismissed Chiang's claims pertaining to the line of credit account ending in 9211, noting that this account was the subject matter of a prior lawsuit that was dismissed on summary judgment.[3]

Defendants argue that Chiang's FCRA claims in the present case should be dismissed for the same reasons that his FCRA claims were dismissed in a case against Verizon New England, Inc.  In that case, the First Circuit affirmed the dismissal of Chiang's claims.  However, the Verizon case is easily distinguishable from the present case, as shown below.

A furnisher of credit information, such as Bank of America ("BOA"),[4] is liable under the FCRA, if upon receipt of notification from a credit reporting agency ("CRA"), the furnisher fails to conduct a reasonable investigation of the dispute notification that informs the furnisher of the nature of the consumer's challenge to the reported debt.  Whether an investigation is reasonable may vary depending on the circumstances.  A plaintiff must also show that a reasonable investigation would have revealed an inaccuracy.  Chiang v. Verizon New England, Inc., 595 F. 3d 26, 38 (1st Cir. 2010). Chiang's summary judgment materials show that Bank of America's

---

Chiang, the brother of Plaintiff Wen Y. Chiang, since about 19 of the small claims cases were the case of Wen C. Chiang.  *See* **Affidavit of Wen C. Chiang**, attached to the **Affidavit of Dean Carnahan.**  The original affidavit of Wen C. Chiang was filed in another case.

[3]  This Court dismissed Count 10 of the Second Amended Complaint and noted that Chiang made claims regarding his account ending in 9211 in the prior suit against MBNA America Bank and FIA Card Services.  However, all of the allegations in the prior suit ended in March 2007.  Bank of America continued to make unauthorized charges on the 9211 account and continued to issue negative reports to the credit reporting agencies on this account later in 2007, in 2008 and continuing to the present time.  *See* **Affidavit of Wen Y. Chiang**, ¶ 8, filed herewith. Thus, these later claims relating to the account ending in 9211 are the proper subject matter of the present case.

[4]  FIA alleges that it was the entity that made any reports to a credit reporting agency or that performed an investigation after receipt of notification from a credit reporting agency of Chiang's dispute.  However, Chiang's credit card, his monthly statement and all credit reporting agency documents in this case show that "Bank of America" is the creditor and the furnisher of information.

PDF created with pdfFactory trial version www.pdffactory.com

investigation was unreasonable and that a reasonable investigation would revealed inaccuracies of its reporting to CRAs.

Chiang's summary judgment evidence shows that Bank of America's credit reporting regarding his accounts caused him to suffer recoverable damages.  In addition, Chiang can recover for his out-of-pocket expenses and other damages since the cases cited by defendants are not on point.

In sum, Chiang has a legitimate FCRA claims against defendants and defendants' motion for a summary judgment should be denied.  In addition, this Court should deny defendants' motion for summary judgment pursuant to F.R.Civ.P., Rule 56(f).

## II.   DISPUTES OF MATERIAL FACTS

Defendants field a Statement of Material Facts (Doc. 50) with their summary judgment motion.  Chiang has filed a Response to Defendants' Statement of Facts with his opposition to the motion for summary judgment.

Defendants' Statement of Facts and Chiang's Response to Defendants' Statement of Facts show the following disputes as to material facts.

Defendant Bank of America changed Chiang's Visa account from an account ending in 6419 to an account ending in 1736 after he complained about unauthorized charges. *See* **Affidavit of Dean Carnahan, Chiang's deposition, p. 173, l. 2-8**.

Chiang's account may have been over limit in January 2008.  However, Bank of America credited Chiang with this over limit fee by letter dated June 30, 2008. *See* **Affidavit of Wen Y. Chiang, June 30, 2008 letter from Bank of America.**  The January 2009 statement lists a balance of $3,405.70, which is below the credit limit of $3.500.00 (Doc. 52-1, page 43). Chiang's account was not over limit in February 2009.  The February 24, 2008 statement shows

PDF created with pdfFactory trial version www.pdffactory.com

that the balance is $3,637.18 (Doc. 52-1. page 43).  However, Bank of America overcharged

Chiang for an unauthorized charge on November 3, 2008 in the amount of $381.43. *See*

**Affidavit of Chiang, Statement for November 2008.**  Bank of America also overcharged

Chiang in the following ways: (1) overdraft protection fees - $30.00; (2) charging interest on the

unauthorized charge - $97.02; (3) charging exorbitant interest - $335.47; (4) charging over limit

fees when the account was not over limit - $78.00). *See* **Affidavit of Chiang, ¶¶ 2-6.**

Considering these overcharges, Chiang account was not over limit in February 2009 or in March

2009.

Defendants allege that Bank of America properly investigated the dispute notifications

that it received from credit reporting agencies ("CRAs") in accordance with its policies and

procedures. However, defendants do not state what their policies and procedures were.

Defendants state that Bank of America received 2,800 dispute notifications ("ACDV's") each

day and had 24 employees to investigate and respond to the CRAs. (Doc. 51, ¶ 5). Assuming that

four of these employees were on vacation or out of work for personal reasons, it is reasonable to

infer that 20 employees investigated and responded to the 2,800 ACDVs. It is also reasonable to

infer that with coffee breaks, lunch break and other non-work activities, that each of these

employees worked seven hours each day.  Thus, each of these employees would have to

investigate the dispute and report back to the CRA on 20 ACDVs each hour.  Three minutes to

investigate each ACDV and report back to the CRA leaves no time for an employee to do more

that a cursory investigation.  Bank of America states that these employees have access to the

account and billing records. (Id. at ¶ 6). Thus, these employees only investigate and report on

these limited records.  Such a limited, cursory investigation is not a reasonable investigation.

4

Chiang is the sole owner of his company and the only shareholder.  Thus, these damages are recoverable, since they were Chiang's personal losses and damages.

Defendants allege that after an ACDV is investigated, Bank of America will either confirm, delete or modify the consumer's credit information.  However, there is no evidence that Bank of America ever responded in any way other that to confirm that its reporting was accurate.

Defendants allege that Bank of America received 10 ACDVs for Chiang's account beginning in July 2008.  However, this Court has ordered all of the CRAs to produce documents regarding Chiang's account and these documents may show other ACDVs or other information relevant to Chiang's claims.

Defendants allege that all of its reporting was accurate based on the account history at the time of reporting.  This is nothing but defendants' allegation that all of its monthly statements were accurate, when they were not.  In addition, this allegation of Bank of America shows only a limited search to perform its duty of a reasonable investigation.  Defendants state that Chiang had disputed his account information, but do not state the nature of this dispute or the date of the dispute.  On November 15, 2008, Chiang received notice that Experian was reporting that Bank of America had reported that Chiang's account was 30 days past due. *See* **Affidavit of Chiang, Nov. 15, 2008 letter from Discover Card.**  In addition, defendants' own document shows that Bank of America had reported that Chiang was delinquent in his payment in July 2008 and was one month late in his payments in August, September, November and December 2008.  (Doc. 51-1, page 28 of 31).  However, the statements for these months (Doc. 52-1) do not show a delinquency in July 2008 or that Chiang was one month late in his payments for August, September, November or December 2008. Thus, this reporting was inaccurate and a review of Bank of America's monthly statement would have shown these inaccuracies.  In addition, the

5

PDF created with pdfFactory trial version www.pdffactory.com

**Affidavit of Linda Chiang**, filed herewith, shows that a buyer obtained Chiang's credit report in November 2008 and refused to do business with Chiang because Chiang's credit report revealed that he had made a late payment or late payments to a bank.  The account records of Bank of America (Doc. 52-1) do not show any late payments prior to November 2008 or in November 2008.  Thus, this reporting by Bank of America was inaccurate.  In addition, Bank of America's investigation was unreasonable since it ignored it own records that show no late payment.

Defendants do not state what they originally reported to CRAs, e.g. late payments, over limit, or the date of these initial reports.  Defendants only discuss their reports <u>after</u> they received notification from a CRA.

Defendants allege that Bank of America did not report a late payment on Chiang's account until March 23, 2009.  However, as shown above, Bank of America did report late payments in July, August, September, November and December 2008.

Defendants allege that they never reported that Chiang was "over limit" on his Visa account.  However, the ACDVs show that Chiang's account was being reported as "over limit." (Doc. 51-1, page 2 of 31; Doc. 51-1, page 8 of 31).

## III.   <u>LEGAL STANDARD</u>

A motion for summary judgment can only be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issues as to any material facts and that the moving party is entitled to judgment as a matter of law.  F.R.Civ.P., Rule 56(c).  The Court must view the facts in the light most favorable to the non-moving party and must draw all reasonable inferences in that party's favor.  <u>Barbour v. Dynamics Research Corp.</u>, 63 F. 3d 32, 36-37 (1st Cir. 19950.  At the summary judgment stage, the judge's function is not himself or herself to weigh the evidence or determine the truth

PDF created with pdfFactory trial version www.pdffactory.com

of the matter, but to determine whether there is an issue for trial.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 247, 249 (1986).

## IV.   PLAINTIFF'S SUMMARY JUDGMENT MATERIALS SHOW A VALID FCRA CLAIM

### A.   Plaintiff Must Show That Bank of America Failed to Conduct a Reasonable Investigation

A furnisher of credit information, such as Bank of America ("BOA"),[5] is liable under the

FCRA, if upon receipt of notification from a credit reporting agency ("CRA"), the furnisher fails

to conduct a reasonable investigation of the dispute notification that informs the furnisher of the

nature of the consumer's challenge to the reported debt.  Whether an investigation is reasonable

may vary depending on the circumstances.  A plaintiff must also show that a reasonable

investigation would have revealed an inaccuracy.  Chiang v. Verizon New England, Inc., 595 F.

3d 26, 38 (1st Cir. 2010).  The duty of Bank of America was to determine if the information it

furnished was "incomplete or inaccurate." Id. at 37.

Notice of a dispute from a consumer does not directly trigger any obligation under the

FCRA.  However, a consumer's affidavits or letters to the creditor can be considered at the

summary judgment phase.  Id. at 39.

In the present case, Chiang's summary judgment materials show that Bank of America's

investigation was unreasonable[6] and that an alternative investigation would have uncovered the

inaccuracies in Bank of America's reporting.

---

[5]  FIA alleges that it was the entity that made any reports to a credit reporting agency or that performed an investigation after receipt of notification from a credit reporting agency of Chiang's dispute.  However, Chiang's credit card, his monthly statement and all credit reporting agency documents in this case show that "Bank of America" is the creditor and the furnisher of information.

[6]  Defendants argue that the First Circuit in Chiang v. Verizon found that none of the ACDVs alerted Verizon that plaintiff was disputing erroneous charges.  However, in the present case, the ACDVs notified Bank of America that

PDF created with pdfFactory trial version www.pdffactory.com

The FCRA protects consumers from dissemination of inaccurate information.  Chiang v. Verizon, *supra* at 38.  In the present case, Chiang's summary judgment materials demonstrate a causal relationship between Bank of America's unreasonable investigation and its failure to discover inaccuracies in Chiang's accounts.  Id. at 37.

In sum, Chiang's summary judgment materials show that (1) Bank of America received dispute notifications (i.e. ACDVs) from credit reporting agencies; (2) Bank of America failed to conduct a reasonable investigation; and (3) an alternative investigation by Bank of America would have uncovered factual inaccuracies in Bank of America's reporting on Chiang's accounts.

### B.   Bank of America Failed to Conduct a Reasonable Investigation After It Received ACDVS Relating to Chiang's Accounts

Chiang's summary judgment evidence shows that Bank of America failed to conduct reasonable investigations of the ACDVs defendants claim they received from CRAs.  Defendants allege that they received ten ACDVs from CRAs.[7]

The Affidavit of Randolph Geiser of FIA Card Services (Doc. 51) states that Bank of America receives about 2,800 ACDVs from CRAs every day.  Bank of America has established t Credit Bureau Dispute department with about 24 employees, who have access to the account and billing history, to process, investigate and respond to the CRAs. (Doc. 51, ¶¶ 4, 5).  It is reasonable to infer that four of these employees were on vacation or out of work on each day, so that twenty employees reviewed the ACDVs, investigated and responded to the CRAs.  With coffee breaks, lunch breaks and other non-work activities, it is reasonable to infer that each of

---

Chiang claimed that current balance was erroneous (Doc. 51-1, p. 4) and that his account was subject to identity fraud (Doce. 51-1, p. 22).  This information alerted Bank of America to perform more than a cursory investigation.
[7]  This Court ordered the CRAs to produce specific documents relating to this case and all of the CRAs have violated the Court's orders.  Chiang has filed motions for contempt against Equifax, Experian and TransUnion. (Docs. 54, 55 and 56).  Until the CRAs provide the documents ordered by the Court, summary judgment is not appropriate.  Until these documents are produced, it cannot be determined whether defendants received only ten ACDVs.

PDF created with pdfFactory trial version www.pdffactory.com

these employees performs these tasks seven hours per day.  Thus, each employee must review the ACDVs, perform an investigation and respond back to the applicable CRA for 20 ADCVs each hour.  This would leave only three minutes for an employee to review an ADCV, bring up the account on another computer, perform an investigation and report back to the CRA.  **These three minutes per ACDV leave insufficient time to conduct any reasonable investigation at all** and means that any investigation by Bank of America in the present case is per se unreasonable and violates the FCRA.

Bank of America alleges that none of the ACDVs alerted it that Chiang was disputing any particular charge or transaction appearing on his accounts statement. This argument is not based on reality.  As Mr. Geiser states in his affidavit (Doc. 51, ¶ 3), the CRAs only use a "universal industry dispute code" with its universal industry wording related to the "dispute code."  However, at this summary judgment phase, the Court should consider affidavits submitted by Chiang and communications from Chiang to Bank of America describing his particular disputes in a letter dated July 21, 2008, in a Cardholder Statement on November 3, 2008, in a letter on March 5, 2009, in a letter dated June 9, 2009, in a letter dated June 29, 2009 and in a Cardholder Claim Sheet on May 27, 2009.  *See* **Affidavit of Wen Y. Chiang**, to which these communications are attached.

In addition, the Gieser Affidavit (Doc. 51) states that Bank of America employees only have access to account and billing records.  Thus, Bank of America limits its investigations to only its own account and billing records and never reviews any underlying documents.  This was exactly the type of limited investigating that a jury found was unreasonable in Johnson v. MBNA America Bank, N.A., 357 F. 3d 426, 431 (4th Cir. 2004).  The Bank of America employees

9

PDF created with pdfFactory trial version www.pdffactory.com

simply rubber stamp whatever appears in the account and billing records without any investigation at all.

Thus, Bank of America's investigation of Chiang's billing disputes was unreasonable.

**C.     Chiang's Summary Judgment Evidence Shows That an Alternative Investigation Would Have Revealed Factual Inaccuracies in Bank of America's Reporting**

Defendants argue that in <u>Chiang v. Verizon</u>, *supra,* the First Circuit held that a billing dispute – irrespective of merit – cannot form the basis of a FCRA claim.  However, in <u>Chiang v. Verizon</u>, the First Circuit stated that Verizon was aware of Chiang's dispute and could have reviewed his account and billing history and could have confirmed that the factual information, although disputed, was nonetheless accurate.  <u>Chiang v. Verizon</u>, *supra* at 40.  However, in the present case, Bank of America did not review any underlying documents that would have shown that its reporting was inaccurate.  For example, underlying documents showed that Chiang disputed the overdraft protection fees.[8]

In addition, on November 15, 2008, Chiang received notice that Experian was reporting that Bank of America had reported that Chiang's account was 30 days past due. *See* **Affidavit of Chiang, Nov. 15, 2008 letter from Discover Card.**  In addition, defendants' own document shows that Bank of America had reported that Chiang was delinquent in his payment in July 2008 and was one month late in his payments in August, September, November and December 2008.  (Doc. 51-1, page 28 of 31).  However, the statements for these months (Doc. 52-1) do not show a delinquency in July 2008 or that Chiang was one month late in his payments for August, September, November or December 2008. Thus, this reporting was inaccurate and a review of

---

[8]   Defendants' argument that Chiang signed a document authorizing the overdraft protection charges is without merit since Chiang asked to review the document.  The Bank of America employee told Chiang that it was not necessary to review the document since it was only to obtain an ATM card.  Chiang went to a branch office to complaint about these charges.  Bank of America agreed to stop the charges, but refused to do so and refused to provide the credits to Chaing's account.  *See*  **Affidavit of Wen Y. Chiang,** ¶¶ 3-4.

PDF created with pdfFactory trial version www.pdffactory.com

Bank of America's monthly statements would have shown these inaccuracies.  In addition, the **Affidavit of Linda Chiang**, filed herewith, shows that a buyer obtained Chiang's credit report in November 2008 and refused to do business with Chiang because Chiang's credit report revealed that he had made a late payment or late payments to a bank.  The account records of Bank of America (Doc. 52-1) do not show any late payments prior to November 2008 or in November 2008.  Thus, this reporting by Bank of America was inaccurate.  In addition, Bank of America's investigation was unreasonable since it ignored it own records that show no late payments for these months.

Any reasonable investigation would have uncovered these factual inaccuracies in Bank of America's reporting.  Also, any reasonable investigation would have revealed the factual inaccuracies related to the unauthorized charge by RCN, since Bank of America knew it was an unauthorized charge since Chiang paid RCN with his Bank of America debit card and RCN later charged the same amount on his credit card.  Bank of America refused to remove the charge and continued to charge Chiang interest on this unauthorized charge for each month.  *See* letters from Chiang to Bank of America and his Cardholder Claim Statements provided to Bank of America, attached to the **Affidavit of Wen Y. Chiang.**

Defendants argue that it was reporting to the CRAs that Chiang was disputing his account information and that no more was required by Bank of America.[9]  This argument has no merit since the FCRA imposes a duty on Bank of America to conduce a reasonable investigation upon receipt of a dispute notification from a CRA.  It was this duty that Bank of America failed to perform and this failure leads to the liability of Bank of America under the FCRA.

---

[9]   Defendants refer to the Affidavit of Geiser to state that Chiang disputed his account information prior to July 2008.  However, defendants do not provide the nature of this dispute or the date(s) of the disputes.  This is important since Bank of America may have removed an unauthorized charge, but failed to credit Chiang with the interest Bank of America had charged on the unauthorized charge.

PDF created with pdfFactory trial version www.pdffactory.com

**D.     Chiang Has Suffered Recoverable Damages**

Chiang's damages consist of his out-of-pocket expenses when he traveled to Hong Kong and China in April and May 2008 and when he traveled to China, Hong Kong and Africa in August 2008.  His damages also include $10,000.00 that he owed to his agent for Asia for her expenses.  In addition, Chiang's damages include the time and income he lost from his local, residential construction work for the times he was traveling. *See* Doc. 53-6; Doc. 53-7 at Int. Answers No. 5, 6 and 7.

Chiang met a buyer in Asia who was willing to buy a large quantity of used rail from Chiang.  This buyer stated that he would obtain a credit report of Chiang to ensure that Chiang had good credit and the ability to do business with Chiang.  In late October and in November 2008, the buyer told Chiang's agent that he had obtained Chiang's credit report that stated that Chiang had a late payment history and a history of being over his credit limit with Bank of America accounts ending in 9211 and 6419.  Because of this negative reporting by Bank of America and Bank of America's refusal to correct its inaccurate reporting, this buyer refused to do business with Chiang, causing Chiang damages.  *See* **Affidavit of Linda Chiang**, attached to **Affidavit of Dean Carnahan,** filed herewith.  **Chiang's Visa account was never over limit because of Bank of America's unauthorized and illegal charges.**

Thus, as a result of Bank of America's inaccurate reporting, its failure to make a reasonable investigation and its continuing the erroneous reporting, Chiang suffered these damages that were directly caused by Bank of America's violation of the FCRA.

Defendants argue that Chiang cannot recover for business damages, citing <u>Zeller v. Samia</u>, 758 F. Supp. 775 (D. Mass. 1991)  and <u>Yeager v. TRW, Inc.</u>. 961 F. Supp. 161 (E.D. Tex. 1997).  However, both of these cases do not discuss damages recoverable under the FCRA.

PDF created with pdfFactory trial version www.pdffactory.com

Both of these cases hold that if a credit report is used to assist a person's application for personal credit, the information constitutes a "consumer report" and is governed by the FCRA.  Credit reports issued for commercial, business or professional purposed are outside the scope of the FCRA.  Defendants also cite the case of  Natale v. TRW, Inc., 1999 U.S. Dist. LEXIS 3882 *12 (N.D. Cal. 1999).  That case also involved the application for credit and not damages recoverable under the FCRA.  The present case does not involve Chiang's applications for credit.  Thus, the cases cited by defendant do not apply to Chiang's claim for damages in the present case.

### E.    Defendants' Summary Judgment Should Be Denied Pursuant to F.R.Civ.P., Rule 56(f)

Rule 56(f) established a procedure to handle situations where the party opposition summary judgment needs additional time to take discovery before responding to the motion.  In this situation, the party may file a Rule 56(f) affidavit stating the need for additional discovery and asking that the summary judgment be either denied or deferred pending the additional discovery.  F.R.Civ.P., Rule 56(f); *also see* Colotex Corp. v. Catrett, 44 U.S. 317, 326 (1986). Summary judgment should be refused, at least for the moment "where the non-moving party has not had the opportunity to discover information that is essential to his opposition." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 260, n. 5 (1986).  In the present case, the problem has arisen since the CRAs have not honored the Court's orders and have failed to produce the documents ordered by the Court.  These documents are needed by Chiang to support his FCRA claim against defendants. This situation is just the same as a need for additional discovery.

On July 14, 2010, this Court issued Orders directing the three credit reporting agencies (Experian, Equifax and TransUnion) to produce specific documents related to plaintiff's claims in this case.  TransUnion has produced no documents.  Experian has produced a few documents, but need a court order to produce its "internal" documents.  Plaintiff has filed a Motion for a

PDF created with pdfFactory trial version www.pdffactory.com

Confidentiality Order (Doc. 58) that must be signed by the Court and forwarded to Experian to

obtain its "internal" documents.  Equifax has produced some documents irrelevant documents

and did not produce all notifications that it sent to Bank of America. Due to the failure of the

credit reporting agencies to comply with the Court's Order,  plaintiff cannot present by affidavit

(or the certifications attached to the Court's Order to be signed by the custodian of each credit

reporting agency) facts essential to justify plaintiff's opposition to defendants' summary

judgment motion. *See* Fed.R.Civ.P. 56(f).  *See* **Affidavit of Dean Carnahan,** ¶¶ 2-4, filed

herewith.

For these reasons, the Court should deny defendants' motion for summary judgment.

## V.   <u>CONCLUSION</u>

Chiang's evidence shows that Bank of America violated its FCRA duty to perform a

reasonable investigation upon receipt of a dispute notification from a CRA.  Chiang's evidence

also shows that Bank of America's reporting contained factual inaccuracies and that an

alternative investigation would have uncovered these factual inaccuracies.  In addition, Chiang's

evidence shows that Bank of America's employees only had three minutes to review an ACDV

from a CRA, perform a reasonable investigation and report back to the CRA.  This evidence

shows that these employees did not have time to perform any investigation at all.  As a result,

Bank of America violated its duty to perform a reasonable investigation.  Chiang's evidence also

shows that he suffered damages recoverable under the FCRA caused by Bank of America's

inaccurate reporting and its refusal to correct this incorrect reporting.  This Court should deny

defendants' motion for summary judgment pursuant to F.R.Civ.P., Rule 56(f).

Accordingly, Chiang respectfully requests this Court to deny defendants' motion for

summary judgment.

PDF created with pdfFactory trial version www.pdffactory.com

By Plaintiff's Attorney,


/s/ Dean Carnahan
DEAN CARNAHAN
BBO #074580
LAW OFFICES OF DEAN CARNAHAN
51 Newcomb Street
Arlington, MA  02474
Dated:  August 26, 2010          (781) 641-2825


## CERTIFICATE OF SERVICE

I, Dean Carnahan, hereby certify that on this day, I served a copy of this notice to counsel for defendants, by and through the ECF filing system.

Date:  August 26, 2010          /s/ Dean Carnahan
                                Dean Carnahan

B-2403-MOSJ

PDF created with pdfFactory trial version www.pdffactory.com