UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11908-RWZ

WEN Y. CHIANG

v.

BANK OF AMERICA, MBNA AMERICA BANK
and FIA CARD SERVICES, N.A.

ORDER
March 11, 2011

ZOBEL, D.J.

Plaintiff's Second Amended Complaint alleges that defendants Bank of America, MBNA America Bank and FIA Card Services violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b) with respect to plaintiff's Visa credit card. The card was originally given a number that ended in 6419, assigned a new number that ended in 1736 in 2008, and again renumbered ending in 7198 in September 2009. Defendants have moved for summary judgment (Docket # 48), which plaintiff vigorously opposes.

**First, the Correct Defendants**.

Bank of America, N.A., incorrectly named in the complaint, challenges its presence in this law suit. By affidavit, Peter Sweeney, Assistant Vice President with Bank of America, N.A. explains that the account was opened in 2005 with a different corporation, Bank of America Corporation, N.A. (USA). In October 2006, Bank of America, N.A. (USA) merged into FIA Card Services, N.A. ("FIA"), itself formerly known as MBNA American Bank, N.A. Plaintiff provides no evidence to dispute these names

or this corporate history. Accordingly, Bank of America, N.A. is dismissed from the case and the court will now consider the motion for summary judgment of the remaining defendants.[1]

**Second, the Claim**

The only claim asserted in the operative complaint is brought under the Fair Credit Reporting Act. It affords a remedy to consumers for the failure of a "furnisher" of credit to conduct an investigation when notified by a credit reporting agency ("CRA") of a consumer's dispute with information concerning his account and to report any inaccuracies to the CRA. To prevail on this claim plaintiff has to prove that when FIA received notification of a dispute from a CRA it (1) failed to conduct an objectively reasonable investigation of the dispute notification it received; and (2) a reasonable investigation would have uncovered an inaccuracy. Moreover, as the Court of Appeals pointed out in another of plaintiff's litigational endeavors under this statute, plaintiff has to show a "factual inaccuracy, rather than the existence of disputed legal questions." Chiang v. Verizon New England, Inc., 595 F3d 26, 38 (1st Cir. 2010). Defendants premise their motion for summary judgment on their evidence, i.e. supporting affidavits, together with plaintiff's interrogatory answers and excerpts of his deposition. Before addressing the merits of the motion it is necessary to rule on a number of related filings by all parties.

---

[1] Defendants filed their several motions jointly. Since one of the defendants is improperly named, I will hereafter consider defendants' joint papers as those of FIA and MBNA only.

2

### Third, the Related Motions

Both parties have filed a number of motions that pertain to the pleadings and to evidence proffered in opposition to the motion for summary judgment.

- **A. 1. Plaintiff's Motion to Strike the Answer to the Amended Complaint, Counterclaim (Docket # 31), and**
- **2. Defendants' Motion for Leave to File an Answer and Counterclaim (Docket # 33)**

Plaintiff correctly points out that defendants' answer to the second amended complaint was late. However, I accept defendants' excuse that the state of the pleadings was somewhat muddled as a result of earlier disputes and rulings concerning the second amended complaint. Accordingly, the motion to strike (# 31) is denied and the motion for leave to file an answer and counterclaim to plaintiff's second amended complaint (# 33) is allowed.

- **B. 1. Plaintiff's Motions for Orders of Contempt Against Equifax Information Services, LLC, Transunion, LLC, and Experian (Docket ## 54, 55, and 56),**
- **2. Plaintiff's Motion to Amend the Complaint to Add New Defendants (Docket # 57), and**
- **3. Plaintiff's Motion for a Confidentiality Order (Docket # 58)**

These motions arise out of plaintiff's attempt to discover from the named CRAs all records and documents relating to any written complaint or dispute of plaintiff to such CRA. These requests are wholly irrelevant to the issues in this case which necessarily focus not on the conduct of the CRAs, but entirely on the conduct of the furnisher of credit, namely FIA. They also arise out of the court's improvident grant of orders to the CRAs to produce the documents, improvident in that the CRAs are not parties to this action nor are they within the jurisdiction of this court. For these reasons all of these

3

motions (## 54, 55, 56, 57 and 58) are denied, and the court's orders (Docket ## 43, 44 and 45) are withdrawn.

### C. Defendants' Motion to Strike Plaintiff's Request Pursuant to Fed. R. Civ. P. 56(f) (Docket # 68)

This motion addresses what defendants perceive to be a request by plaintiff in his opposition to the motion for summary judgment. Since I do not so characterize plaintiff's statement in his opposition, the motion to strike, (# 68) is denied as unnecessary.

### D. Defendants' Motion to Strike the Affidavits of Wen Y. Chiang (Docket # 67) and Linda Chiang (Docket # 69)

Plaintiff's affidavit discloses a number of disputes he had with the several named defendants pertaining not only to his Visa account in issue in this case, but also to a checking account. They are irrelevant to this case which requires proof of an unreasonable investigation by FIA after it receives notification of a dispute, not proof of disputed factual or legal questions.

The affidavit of Linda Chiang addresses plaintiff's claimed damages. Apart from the fact that the affidavit is replete with inadmissible hearsay, it is irrelevant to the issues before me at this stage of the litigation.

The motions to strike (## 67 and 69) are allowed.

## Fourth, the Merits

Defendants have supported their motion for summary judgment with the affidavit of Randolph Geiser, an Assistant Vice President and Operations Manager for Claims at FIA, as well as plaintiff's deposition and interrogatory answers. It is undisputed that

4

beginning in 2008, FIA was notified that plaintiff was contesting the accuracy of his Visa account information and, on two occasions, claiming fraud and identity theft. It is also undisputed that he challenged and continues to challenge the correctness of FIA's responses to the CRAs.

Plaintiff acknowledges that his account "may have been over limit in January 2008," but he says that matter was resolved by June 2008. (Pl.'s Mem. in Opp. 3, Docket # 60.) Nonetheless, the over limit entry remained on his account. He states in his affidavit that Bank of America overcharged the Visa account by debiting it, without his authority, for an overdraft protection fee attributable to his checking account, by charging interest on that unauthorized charge, by charging exorbitant interest and by charging over limit fees when the account was not over limit.

The merits of his disputes are difficult to discern as plaintiff does not distinguish between his Visa and checking accounts. However, the merits of the dispute are, in the context of plaintiff's claims in this case, in any event, irrelevant. The only question is whether FIA, upon receiving notice from the CRAs of plaintiff's challenge to information given to the CRAs, did conduct a reasonable investigation.

In his affidavit Mr. Geiser describes FIA's procedures used in response to consumer dispute notices from the CRAs. The CRA reports each consumer dispute through a computer system known as E-OSCAR by means of an "Automated Consumer Dispute Verification" known for short as an ACDV. The ACDV, using code numbers, includes relevant information concerning the consumer, the account and the dispute. Defendants have established a Credit Bureau Disputes Department which has approximately 24 employees who assist with processing, investigating and responding

to the ACDV. They have access to FIA account and billing records to enable them to investigate each dispute, review the account and billing history, and ultimately determine the accuracy of the information reported to the CRAs.

The affidavit and attached documents indicate that FIA received ten ACDVs between July 25, 2008 and May 21, 2009. These attachments, which are redacted copies of the ACDV summaries and FIA response, show that FIA responded to the notices of plaintiff's disputes by confirming that the balance was, in fact, accurate as of the date reported, or updating plaintiff's account balance, or, in response to the claim of fraud, verifying signature and identity. (Ex. 1 to Geiser Aff., Docket # 51). Finally, Mr. Geiser testifies that he personally reviewed the reporting history with respect to the account and that FIA did not report any late payments until March 2009, and that it never reported that the account was over limit. Other than an arithmetic exercise attempting to show that the number of reports could not be processed by the number of employees tasked with reviewing and answering them, plaintiff proffers no evidence to contradict the Geiser affidavit. The mathematical opposition is pure speculation and does not create an issue of material fact to defeat summary judgment.

### Fifth, the Conclusion

Plaintiff's claim is narrow. Under the statute he has invoked he has to show that defendants failed to conduct a reasonable investigation of the ACDVs to determine their factual accuracy. Based on the largely undisputed evidence produced by defendants, their motion for summary judgment (Docket # 48) is allowed.

As to the other pending motions, Docket ## 31, 54, 55, 56, 57, and 68 are denied. Docket ## 33, 67 and 69 are allowed. The court's orders, Docket ## 43, 44, and 45, are withdrawn.

Defendant Bank of America, N.A. is dismissed.

March 11, 2011
DATE

/s/ Rya W. Zobel
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE